UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLENE AVERY-LEWIS,

        Plaintiff,

   v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION et al.,

        Defendants.

No. 14 CV 9476

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

In September 2013, Charlene Avery-Lewis, a postal carrier, was delivering mail to a house in Chicago, Illinois, when she fell down the porch stairs. The home was in foreclosure proceedings around that time, and she brought negligence claims sounding in premises liability against a number of defendants, including Federal Home Loan Mortgage Corporation ("Freddie Mac"). Avery-Lewis's suit was originally brought in the Circuit Court of Cook County, but Freddie Mac filed a notice of removal to federal court. Freddie Mac now moves for summary judgment.[1] Freddie Mac's motion for summary judgment, [30], is granted.[2]

---

[1] Freddie Mac asserts that defendant Homesteps is a division of Freddie Mac and requests dismissal of Homesteps. [49] at 6, n.5–6. Homesteps was added as a defendant in plaintiff's second amended complaint, [38], which was filed after Freddie Mac's opening summary judgment brief. Homesteps has not yet appeared in the case. An employee of Homesteps, however, apparently verified Freddie Mac's interrogatories. [30-2] at 6, 11. Plaintiff has not moved for entry of default against Homesteps or raised a dispute about Homesteps's separate legal existence. With this backdrop, Homesteps is considered the same party as Freddie Mac.

[2] Bracketed numbers refer to entries on the district court docket.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the nonmoving party, Avery-Lewis is entitled to all reasonable inferences in her favor, but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)).

II. **Background**

On September 19, 2013, Charlene Avery-Lewis, a postal mail carrier, fell on a loose step at 8006 South Union Avenue in Chicago, Illinois. [39-6] ¶ 1; [39-5] ¶ 4.[3]

---

[3] The facts are taken from Avery-Lewis's responses to Freddie Mac's Local Rule 56.1(a)(3) statement, [39-6], and Avery-Lewis's 56.1(b)(3)(C) statement of additional facts, [39-5]. Freddie Mac did not reply to Avery-Lewis's statement of additional facts, which are therefore deemed uncontroverted under Local Rule 56.1. But to the extent Avery-Lewis asserts legal conclusions in her statement of additional facts (e.g., that Rufus Coleman was not the legal owner of the property), those statements are not deemed uncontroverted—they are not appropriate for Local Rule 56.1 statements. Both parties' briefs do not cite to their LR 56.1 statements but instead directly to the record. Although not explicitly prohibited by LR 56.1, this diminishes the utility of LR 56.1 statements and is not a generally accepted practice in this district. *See, e.g., Mervyn v. Nelson Westerberg, Inc.*, No. 11 C 6594, 2015 WL 6792104, at *1–2 (N.D. Ill. Oct. 30, 2015) (collecting cases). The affidavit of Nancy

The property, at one point owned by Rufus and Barbara Coleman, was the subject of foreclosure proceedings. [39-6] ¶ 3.[4] The Chancery Court of Cook County entered an order approving the judicial sale of the property on September 5, 2013. The order awarded possession of the home to Freddie Mac[5] as of 30 days after entry of the order and authorized eviction of the Colemans once possession changed hands. [39-6] ¶ 5.[6] The order stated that no occupants other than the Colemans could be evicted without further order of the court. [39-6] ¶ 5. The order also stated that any special right to redeem under 735 ILCS 5/15-1604, if applicable, would expire 30 days after entry of the order. [30-2] at 13. The judicial sale deed was executed on September 20, 2013, and recorded on October 7, 2013. [39-6] ¶¶ 9–10.

A few days later, the eviction processor mailed a relocation assistance agreement, also known as a "Cash for Keys" agreement, to the property. [49-1] at 1. About a week later, she received a signed copy of the "Cash for Keys" agreement

---

Vallone is not considered as part of the record because the plaintiff never filed a signed version on the docket. *See* [61]. Even if it had been considered, the affidavit did not add or dispute any material facts.

[4] Avery-Lewis denies this statement of fact, but fails to cite any controverting record evidence, as required under LR 56.1(b)(3)(B).

[5] The September 5th order lists EverBank as the plaintiff in the foreclosure action but identifies Homesteps as the contact for the holder of the certificate of sale or deed. [30-2] at 12–13. Avery-Lewis and Freddie Mac do not dispute that Freddie Mac had a right to the deed as of September 5, 2013.

[6] Avery-Lewis states that the judicial sale deed was conveyed to Freddie Mac on August 8, 2013. [39-5] ¶ 1. This statement conflicts with her admission that the judicial sale order was not entered until September 5th, [39-6] ¶ 4, and is unsupported by her cited evidence (a motion to dismiss from pro se defendant Rufus Coleman, styled as an unsigned affidavit). Indeed, orders from the foreclosure action (and the unsigned Vallone affidavit) indicate that the property was initially sold to EverBank. [23-2] at 2–3; [55-1] ¶ 5. The parties do not explain how Freddie Mac obtained the property from EverBank but do not dispute that Freddie Mac had a right to the deed, which was executed September 20, 2013. [39-6] ¶ 9.

3

from Timothy Coleman and Lenora Teresi, along with what appeared to be a rental agreement between the Colemans, as landlords, and Timothy Coleman and Teresi, as tenants. [49-1] at 1.[7] The Cash for Keys agreement states that, in exchange for $5,000, Timothy Coleman and Teresi agreed to vacate the premises on or before November 8, 2013. [39-6] at ¶ 11; [49-1] at 4.

Freddie Mac now moves for summary judgment on Avery-Lewis's negligence claim against it.

### III. Motion to Stay

Avery-Lewis argues that Freddie Mac's motion fails as a matter of law but in the alternative requests a stay of the motion for summary judgment pending further discovery. [39] at 2, 6–7. Plaintiff requests a stay under Federal Rule of Civil Procedure 56(d) to take unspecified depositions and to authenticate the Cash for Keys agreement—which has since been authenticated—and utility bills from Timothy Coleman and Teresi. [39-4] at 1–3. This request is denied. The purpose of authenticating the Cash for Keys agreement and the utility bills was to identify whether additional occupants lived in the property at that time, and authentication of the Cash for Keys agreement serves that purpose. Discovery to establish the results of inspections conducted at the direction of Freddie Mac, or to establish

---

[7] Avery-Lewis acknowledges the existence of a Cash for Keys agreement and rental agreement, but objects to them as unfounded hearsay. The eviction processor can authenticate the Cash for Keys agreement and testify that she received the rental agreement, but she does not have sufficient personal knowledge to authenticate the rental agreement itself. The agreements, however, are statements that constitute verbal acts (e.g., words of contract) and are not hearsay under Federal Rule of Evidence 801(c). *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (citing Fed. R. Evid. 801(c) Advisory Committee Notes).

4

Freddie Mac's knowledge of the dangerous condition of the steps, would not raise a material issue necessary for resolution of the current motion. Plaintiff has not demonstrated how the number of inspections would shed light on Freddie Mac's control over the property. The inspections themselves do not suggest an ability to exclude people from the property. Freddie Mac's knowledge of the property's condition would not establish a duty to maintain the property or any indicia of Avery-Lewis's reliance on a duty or undertaking assumed by Freddie Mac. As discussed below, the material facts about Freddie Mac's control over the property and any voluntary assumption of duty are not disputed.

IV.   Analysis

Freddie Mac asserts that on September 19, 2013, it had neither control nor possession over the home where Avery-Lewis fell (and therefore owed no duty to her) because: (1) it did not have legal title to the house until the deed had been delivered following the foreclosure sale, (2) its interest in the home remained subject to the Colemans' right to the property during a redemption period following confirmation of the foreclosure sale, and (3) its ability to control the property was restricted until their tenants vacated the premises. Avery-Lewis argues that there are factual disputes regarding Freddie Mac's ownership of the property (in particular, a dispute over whether the Colemans or Freddie Mac owned the home given the state of foreclosure proceedings on the day of the fall) and that even if it did not yet have legal title, Freddie Mac exerted control over the property and voluntarily undertook a duty to third-party invitees by having its agents inspect the property.

### A. Possession and Control

For a duty to arise under premises liability, the defendant must "possess and control" the real property on which the tort occurred. *Godee v. Illinois Youth Soccer Ass'n*, 327 Ill.App.3d 695, 699 (2d Dist. 2002) (citing *Esser v. McIntyre*, 267 Ill.App.3d 611, 617 (1st Dist. 1994), *aff'd*, 169 Ill.2d 292 (1996)); *see Buczak v. Cent. Sav. & Loan Ass'n*, 230 Ill.App.3d 490, 497 (1st Dist. 1992) (Premises liability "hinges on possession and control, not mere ownership."). Possession means "occupation of the land with intent to control it." *O'Connell v. Turner Constr. Co.*, 409 Ill.App.3d 819, 824 (1st Dist. 2011) (quoting Restatement (Second) of Torts § 343E(a) (1965)). "Control" includes the ability to exclude people from the property or to direct how the property is used. *O'Connell*, 409 Ill.App.3d at 824–26; *Williams v. Sebert Landscape Co.*, 407 Ill.App.3d 753, 756 (1st Dist. 2011).

Freddie Mac did not have possession or control of the property on September 19, 2013, the date of Avery-Lewis's accident. Premises liability depends on possession and control, not ownership, so whether Freddie Mac had legal title to the property at the time (through execution of the deed) is not dispositive. Instead, the issue is whether Freddie Mac occupied the property with the intent to control it, including whether it could exclude people from the property or direct how the property was used. *O'Connell*, 409 Ill.App.3d at 824–26.

Pursuant to the terms of the September 5, 2013 order approving the judicial sale, Freddie Mac was not awarded possession of the property until 30 days after entry of the order. Freddie Mac could not exclude the Colemans or any other

6

occupants from the property until early October 2013.[8] Even after the 30 day period, Freddie Mac could only evict the Colemans; eviction of other occupants would require a separate court order. Freddie Mac, therefore, did not yet exert possession or control over the property on the date of Avery-Lewis's alleged accident. *See, e.g., O'Connell*, 409 Ill.App.3d at 825 (no possession or control where there were no facts suggesting dominion over land); *Marcon v. First Fed. Sav. & Loan Ass'n*, 58 Ill.App.3d 811, 814 (1st Dist. 1978) (mortgagee did not have actual possession or control of property because it did not possess, operate, maintain, use, repair, or control the property or pay any bills for it). Plaintiff's evidence at most indicates that Freddie Mac sent an inspector to the property—an inspector who did not have authority to enter the premises ([39-1] at 9, 12, 18; [39-2] at 3, 9, 12)—and anticipated taking possession. But there is no evidence of Freddie Mac exercising the kind of control that imposes a duty to exercise care for people who encountered the premises.

### B. Voluntary Duty

Avery-Lewis contends that even if Freddie Mac did not possess or control the property at the time, Freddie Mac voluntarily undertook a duty to maintain the

---

[8] The Colemans' right of redemption does not necessarily prove that Freddie Mac was not a possessor. The order approving the judicial sale merely indicated that any redemption period under 735 ILCS 5/15-1604, if applicable, would expire 30 days after entry of the order. The applicability of any right of redemption (e.g., whether the sale price was less than the amount specified in 735 ILCS 5/15-1603(d)), and whether that right prohibited Freddie Mac from controlling the property has not been adequately briefed. But regardless of whether the Colemans legally owned the property or still had a right to redeem the property during these 30 days, the other terms of the September 5, 2013 order prove that Freddie Mac did not have possession or control over the property on the day plaintiff was injured.

7

property by having its agents inspect it. Freddie Mac argues that plaintiff makes unsupported, conclusory assertions that the inspections were performed by its agents and that there is no basis to conclude that these alleged inspections reflected Freddie Mac's intent to undertake a duty to protect third-parties on the property.

Illinois law recognizes a theory of liability premised on voluntary assumption of duty, but this theory is narrowly construed and limited to the extent of the undertaking. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768 (7th Cir. 2015) (citing *Ordman v. Dacon Mgmt. Corp.*, 261 Ill.App.3d 275, 279 (3d Dist. 1994); *Bell v. Hutsell*, 2011 IL 110724, ¶ 12). Where, as here, a plaintiff seeks to hold the defendant liable for failing to perform a necessary act as part of a voluntary undertaking (i.e., failing to repair the porch stairs), Illinois law requires that the harm suffered must be a result of the plaintiff's reliance upon the undertaking. *Thornton*, 796 F.3d at 768 (citing *Bell*, 2011 IL 110724, ¶ 23); *Lewis v. Chica Trucking, Inc.*, 409 Ill.App.3d 240, 256 (1st Dist. 2011) ("In cases of nonfeasance, a plaintiff's reliance on the defendant's promise is 'an independent, essential element' for liability in a case of a voluntary undertaking.") (quoting *Bourgonje v. Machev*, 362 Ill.App.3d 984, 997 (1st Dist. 2005)). A plaintiff's reliance is reasonable where "there is a deceptive appearance that performance had been made, or where a representation of performance has been communicated to plaintiff by defendant, or where plaintiff is otherwise prevented from obtaining knowledge or substitute performance of the undertaking." *Lewis*, 409 Ill.App.3d at 256 (quoting *Chisolm v. Stephens*, 47 Ill.App.3d 999, 1007 (1st Dist. 1977)). "But, to justify reliance, plaintiff

8

must be unaware of the actual circumstances and not equally capable of determining such facts." *Id.* (quoting *Chisolm*, 47 Ill.App.3d at 1007).

Here, Avery-Lewis argues that Freddie Mac undertook the responsibility to inspect the property for danger and then failed to repair the steps. Freddie Mac's broker inspected the property on August 19, 2013. [39-5] ¶ 6. Servicelink inspected the property on several dates between July 2012 and July 2013.[9] [39-5] ¶ 6. Freddie Mac possessed copies of the inspection reports prior to September 19, 2015. [39-5] ¶ 7. On the date that Avery-Lewis fell, there were no warning signs posted at the property. [39-5] ¶ 5.

Taking all these facts to be true, and considering all reasonable inferences in Avery-Lewis's favor as the non-movant, Freddie Mac is entitled to judgment as a matter of law on the voluntary duty theory. There is no basis to conclude that Freddie Mac's inspection of the property brought with it a duty to repair or even warn others about the results of the inspection, especially when it did not yet have possession or control over the property. Freddie Mac did not respond to Avery-Lewis's statement that the inspection reports note hazards of exterior fixtures, [39-5] ¶8, but it is not clear what hazards Avery-Lewis is referring to in her statement of facts. The reports say that the exterior condition of the property was "good," and there was "no damage." [39-1] at 8, 11. There were concerns reported about the presence of other people at the property or in the neighborhood at the time of the inspection. [39-1] at 6, 9, 12, 15; [39-2] at 6. Nothing in the reports specifically

---

[9] The parties do not explain whether Servicelink was Freddie Mac's broker or an entirely different entity.

identifies the porch steps as a hazard, and nothing about the inspections suggests that Freddie Mac was undertaking a duty (as of September 19, 2015) to address problems identified in the reports.

However, even if Freddie Mac had voluntarily undertaken the task of inspecting the property for hazards and even if the porch steps were identified as a hazard, Avery-Lewis has marshaled no evidence that her reliance on that undertaking caused her injury. There is no evidence that there was a deceptive appearance that the property had been inspected for hazards, that Freddie Mac represented that it had inspected or repaired the property, or that Avery-Lewis was otherwise prevented from knowing that the property was inspected for hazards. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (To survive summary judgment, the nonmoving party must go beyond the pleadings and "identify with reasonable particularity the evidence upon which [she] relies."); *Thornton*, 796 F.3d at 768. Moreover, if visual inspections of the property revealed potential hazards from exterior fixtures, there is no reason why Avery-Lewis was "not equally capable of determining such facts," precluding reasonable reliance on Freddie Mac's alleged voluntary undertaking. *Lewis*, 409 Ill.App.3d at 256 (quoting *Chisolm*, 47 Ill.App.3d at 1007). Summary judgment for Freddie Mac is appropriate in these circumstances. *See, e.g., Thornton*, 796 F.3d at 768.

## V. Conclusion

Freddie Mac's motion for summary judgment, [30], is granted. Judgment will be entered in favor of Freddie Mac and Homesteps, but entry of final judgment must await resolution of the claims against the remaining defendants.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 2/23/16